**THE GIMINO LAW OFFICE, APC**
Peter J Gimino III, Esq. (SBN 198926)
pgimino@giminolaw.com
18101 Von Karman Avenue, Suite 300
Irvine, CA  92612
Telephone:   (949) 225-4446
Facsimile:   (949) 225-4447

**WOODROW & PELUSO, LLC**
Steven L. Woodrow, Esq. (*Pro Hac Vice* to be filed)
swoodrow@woodrowpeluso.com
Patrick H. Peluso, Esq. (*Pro Hac Vice* to be filed)
ppeluso@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, Colorado  80210
Telephone:   (720) 213-0675
Facsimile:   (303) 927-0809

Attorneys for Plaintiff LUCAS ALEX
AMBREZEWICZ, and the Putative Classes

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| LUCAS ALEX AMBREZEWICZ, individually and on behalf of all others similarly situated, | Case No.    5:16-cv-2331 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | |
| LEADPOINT, INC., a Delaware corporation, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff, Lucas Alex Ambrezewicz ("Ambrezewicz" or "Plaintiff"), brings this Class Action Complaint against Defendant LeadPoint, Inc. ("LeadPoint" or "Defendant") to stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") to the cellular telephones of consumers nationwide without their prior express consent and to obtain redress for all persons injured by its conduct.  Plaintiff Ambrezewicz for his Class Action Complaint alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to

all other matters, upon information and belief, including investigation conducted by his attorneys.

## **PRELIMINARY STATEMENT**

1.      The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA" or the "Act") was enacted to protect consumers from unauthorized calls like those alleged in this Complaint – autodialed calls placed to consumers without prior express consent.

2.      Defendant's violations of the Act have caused Plaintiff and the members of the classes (defined below) to experience actual harm, including the aggravation, nuisance, annoyance, waste of time and invasion of privacy that necessarily accompanies the receipt of autodialed calls, in addition to the loss of functionality, diminution in available data, battery life, and value of monies paid for their cellular telephone plans, and the ability to use and enjoy their cellular telephones.

3.      In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit, seeking (1) an injunction requiring Defendant to cease placing autodialed calls to cellular telephones without the express consent of the recipients, (2) declaratory relief, declaring that Defendant's calls violated the TCPA, and (3) an award of statutory damages to the members of the putative classes under the TCPA to be paid into a common fund for the benefit of the Class Members, together with costs and reasonable attorneys' fees.

## **PARTIES**

4.      Plaintiff Ambrezewicz is a natural person.  He is domiciled in the State of California, in this District.  Plaintiff resides in Alta Loma, Rancho Cucamonga, California.

5.      Defendant LeadPoint is a corporation incorporated and existing under the laws of the State of Delaware whose primary corporate headquarters is located at 2045 S. Barrington Avenue, Suite A, Los Angeles, California 90025.  LeadPoint does

business throughout the United States, including in the State of California and this District.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute.  Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq*., because the classes each consist of over 100 people, at least one member of each class is from a State other than California (the state of Defendant), and the amount in controversy exceeds $5,000,000.  Further, none of the exceptions to CAFA jurisdiction apply.

7.     The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of California, is headquartered in this District, and regularly conducts business in the State of California and in this District.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.  The unlawful calls at the heart of this Complaint were directed and/or emanated from this District.  Venue is additionally proper because both Plaintiff and Defendant reside in this District.

## COMMON ALLEGATIONS OF FACT

9.     Defendant LeadPoint purports to be an advertising solutions provider that develops technology to help publishers and advertisers buy and sell consumer leads more efficiently.[1]  Defendant operates a marketplace for leads in numerous fields and economic sectors, including consumer lending, consumer credit, education loans, loan modifications, and payday lending.[2]

---

[1]  http://www.leadpoint.com/about.php
[2]  https://www.linkedin.com/company/leadpoint

10.     While certain types of calls may be within the letter of the law for calls placed to landline ("wireline") telephones, the same calls to cellular ("wireless") telephones violate the TCPA where they are made without prior express written or oral consent.  As explained by the Federal Communications Commission ("FCC") in its 2012 order:

> Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications, research or survey calls, and wireless usage notifications.  Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers, but *require either written or oral consent if made to wireless consumers* and other specified recipients.  [Emphasis added.]

*See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (Feb. 15, 2012).

11.     In violation of this rule, LeadPoint fails to obtain any prior express consent (oral or written) to make the autodialed calls described herein to cellular telephone numbers.

12.     Consumer complaints about LeadPoint's invasive and repetitive calls are legion.  As a sample, consumers have complained as follows:

- I cannot get through to someone to tell them to put me on their do not call list. They call me 5 or 6 imes [sic] a day.[3]

- Calls cell several times a day....recording no way to stop.[4]

- Since last week, they have called 11 times from the 800 number plus 13 times from other numbers.  I never filled out anything.[5]

- Some loan scam...I get two to three calls a day... installed a call blocker on my cell phone.[6]

- Received a call from this number almost immediately after looking up rates and information on FHA loans.  Now I've received 3 calls in 2 hours from them, when I did answer they hung up right away.[7]

---

[3] http://800notes.com/Phone.aspx/1-866-523-3860
[4] *Id.*
[5] http://800notes.com/Phone.aspx/1-800-707-2292/2
[6] *Id.*
[7] *Id.*

13.     In placing the calls that form the basis of this Complaint, Defendant LeadPoint, or its affiliated entities, utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by LeadPoint has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.  LeadPoint's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

14.     Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database.  The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

15.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

16.     There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[8]  Indeed, one service can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[9]

---

[8]  See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp.
[9]  https://www.neustar.biz/services/tcpa-compliance

17.     When placing these calls to consumers, LeadPoint failed to get the prior express consent required by the TCPA of cellular telephone owners/users as required by the TCPA to make such calls.

18.     Furthermore, Defendant calls consumers who have no "established business relationship" with Defendant and who are registered on the National Do Not Call Registry.

19.     Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

20.     Defendant knowingly made (and continues to make) telemarketing calls to cellular telephones without the prior express consent of the call recipients.  As such, Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF LUCAS ALEX AMBREZEWICZ**

21.     On September 27, 2013, Plaintiff registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular telephone.

22.     LeadPoint, either directly or through its affiliates and agents, made a series of unsolicited telemarketing calls, beginning on August 30, 2016, to Plaintiff on his cellular telephone using an automated dialer.

23.     All of the autodialed telephone calls from LeadPoint were made to solicit Plaintiff to refinance a residential mortgage.

24.     On August 30, 2016, Plaintiff received four autodialed telephone calls from LeadPoint on his cellular telephone from 909-313-4442 and 801-994-7834:

1

2

3

4

5

6

7

8

9

10



11

*Figure 1: Image for paragraph 24*

12

13   25.   Plaintiff answered the auto-dialed telephone call from 909-313-4442 at

14   3:08 p.m. on August 30, 2016.  Plaintiff was told that it was calling regarding the

15   refinancing of Plaintiff's mortgage.  Plaintiff said that he was not looking for

16   mortgage refinancing and asked that Defendant not call him again.

17   26.   On August 31, 2016, despite having already informed Defendant that he

18   did wish to be contacted by them, Plaintiff received two additional autodialed

19   telephone calls from LeadPoint on his cellular telephone from 801-994-7834:

20   / / /

21   / / /

22   / / /

23

24

25

26

27

28



*Figure 2: Image for paragraph 26*

27.   Plaintiff answered the auto-dialed telephone call from 801-994-7834 at 6:35 p.m. on August 31, 2016.  Again, Plaintiff was told that Defendant was calling regarding the refinancing of his mortgage.  Annoyed, Plaintiff asked from which website Defendant had allegedly obtained his information, and was told by Defendant that the unsolicited autodialed call related to information obtained through a website known as AmeriValue.[10]  Plaintiff then again asked Defendant to stop calling him.

28.   AmeriValue is one of the many aliases or trade names under which Defendant operates.  Indeed, the Nationwide Multistate Licensing System & Registry or NMLS ID provided on the AmeriValue website, 3175, is the exact same NMLS ID for LeadPoint.[11]  Additionally, the link on the AmeriValue website for "Licenses"[12] leads to the mortgage license disclosure page on the LeadPoint website.[13]

29.   Plaintiff Ambrezewicz never consented either orally or in writing to receive autodialed calls placed to his cellular telephone from Defendant LeadPoint.

---

[10] https://www.amerivalue.com/
[11] http://nmlsconsumeraccess.org/EntityDetails.aspx/COMPANY/3175
[12] https://www.amerivalue.com/
[13] http://www.leadpoint.com/licenses.php

30.     At no time did Plaintiff ever consent to the receipt of autodialed calls to his cellular telephone from LeadPoint nor did he ever provide prior oral or written express consent for LeadPoint to make such calls.

31.     By making unauthorized autodialed telephone calls as alleged herein, LeadPoint has caused consumers actual harm.  In the present case, a consumer could be subjected to many unsolicited auto-dial calls as LeadPoint's opt out mechanism does not work.

32.     To redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls to cellular telephones.

33.     On behalf of the Classes, Plaintiff seeks an injunction requiring LeadPoint to cease all unsolicited and unauthorized autodialed calling activities, a declaration that LeadPoint failed to obtained prior express consent under the TCPA and that it used an ATDS, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the two classes defined as follows:

**Autodialed No Consent Class**:  All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's cellular telephone number; (3) for the purpose of marketing Defendant's products and services; (4) who were called using the same telephone equipment that was used to call the Plaintiff, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

**Do Not Call Registry Class**:  All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner

as Defendant claims it obtained prior express consent to call the Plaintiff.

35.    The following people are excluded from the Classes:  (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.  Plaintiff anticipates the need to amend the Class Definitions following discovery regarding the size and scope of the classes, the type of dialing equipment used, and the nature of any prior express consent Defendant claims was provided by Plaintiff.

36.    On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable. Membership in the Classes is depended upon entirely objective criteria, however, and may be determined by reference to Defendant's business records.

37.    There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

- whether Defendant's conduct constitutes a violation of the TCPA;
- whether Defendant utilized an automatic telephone dialing system to place autodialed calls to members of the Classes;
- whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

- whether Defendant obtained prior express written consent to contact any class members;

- whether LeadPoint's autodialed calls constitute telemarketing or were dual purpose messages; and

- to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

38.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such autodialed calls as well as the loss of cellular plan minutes and temporary inability to enjoy and use their cellular telephones, as a result of the transmission of the autodialed calls alleged herein.  Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting autodialed calls.  Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct.  Plaintiff, like other members of the Classes, received unsolicited autodialed calls from Defendant.  Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Classes.

39.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes.  Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes.  Plaintiff has no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

40.     The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  Specifically, injunctive relief is necessary and appropriate to require Defendant to discontinue placing unsolicited and unauthorized autodialed calls to the public.  Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Classes in placing the autodialed calls at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

41.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.  The claims asserted herein are applicable to all consumers throughout the United States who received an unsolicited and unauthorized autodialed call from Defendant.  The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

42.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

### FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

43.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

44.     Defendant made unsolicited and unauthorized autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class—without their prior express consent.

45.     At no point did Defendant obtain express consent that clearly and conspicuously disclosed to Plaintiff or to any other class member that the consumer was providing consent to be called using an automatic telephone dialing system or prerecorded voice or that providing consent to be called was not a condition (direct or indirect) of any purchase.

46.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.  Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Autodialed No Consent Class simultaneously and without human intervention.  The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, had the capacity to or actually dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.  Defendant's ATDS disseminated

information *en masse* to Plaintiff and other members of the Autodialed No Consent Class.

47.     By placing unsolicited and unauthorized autodialed calls to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

48.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

49.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

### SECOND CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On behalf of Plaintiff and the Do Not Call Registry Class)**

50.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

52.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national

do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

53.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"  The Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists.  For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers.  We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

54.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.  The procedures instituted must meet the following minimum standards:

> (1)  Written policy.  Persons or entiles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2)  Training of personnel engaged in telemarketing.  Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3)  Recording, disclosure of do-not-call requests.  If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  This period may not exceed thirty days from the date of such request . . . .

(4)   Identification of sellers and telemarketers.   A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.   The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5)   Affiliated persons or entities.   In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6)   Maintenance of do-not-call lists.   A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls.   A do-not-call request must be honored for 5 years from the time the request is made.

55.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.  These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

56.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy, available upon request, of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing in the existence and use of any such do not call list, and by failing to record and honor do not call requests.

57.     Defendant made more than one unsolicited telephone call to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls.  Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

58.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

59.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lucas Alex Ambrezewicz, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff Lucas Alex Ambrezewicz as the representative of the Classes, and appointing his counsel as Class Counsel;

B.    An award of actual and statutory damages to be paid into a common fund for the benefit of the Class Members;

C.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

D.    A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA, that it failed to

obtain prior express consent, and that it failed to maintain an internal do not call list as required by applicable regulations;

E.   An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

F.   An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

G.   An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

H.   An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

I.   An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

J.   An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

K.   An award of reasonable attorneys' fees and costs; and

L.   Such other and further relief that the Court deems reasonable and just.

**THE GIMINO LAW OFFICE, APC**

Dated:  November ___, 2016    By:    /s/  *Peter J. Gimino III*
                                        Peter J. Gimino III

**WOODROW & PELUSO, LLC**

Attorneys for Plaintiff LUCAS ALEX
AMBREZEWICZ, and the Putative Classes

---

## <u>JURY DEMAND</u>

Plaintiff requests a trial by jury of all claims that can be so tried.

**THE GIMINO LAW OFFICE, APC**

Dated:  November ___, 2016    By:    /s/  *Peter J. Gimino III*
Peter J. Gimino III

**WOODROW & PELUSO, LLC**

Attorneys for Plaintiff LUCAS ALEX
AMBREZEWICZ, and the Putative Classes